IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GLENN E. ARDREY,

        Petitioner,

v.                                             CIV 01-518 LH/KBM

ERASMO BRAVO, Warden and
ATTORNEY GENERAL for the
State of New Mexico,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Glenn Ardrey's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254, *Doc. 1,* and Respondents' Answer, *Doc. 11.* Because Ardrey filed after the effective date of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 121 S.Ct. 93 (2000); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.* Having considered the arguments, pleadings, and relevant law, I find the petition without merit and recommend that it be denied.

### I.  Background

Petitioner pleaded guilty to armed robbery with a firearm enhancement. Pursuant to a written plea agreement, the District Attorney agreed to recommend a sentence between one and ten years incarceration plus two years of parole. In the plea agreement, Petitioner signed the

section that waived his right to trial and also indicated "I fully understand that if I am granted probation, a suspended sentence or a deferred sentence by the Court the terms and conditions thereof are subject to modification in the event that I violate any of the terms or conditions imposed." *Answer, Exh. B.*[1]  The trial judge sentenced Ardrey to ten years incarceration and suspended three of those years, substituting instead three years of supervised probation and the requirement that Petitioner "successfully complete a long-term substance abuse treatment program." *Exh. A.*

Soon thereafter Ardrey filed a *pro se* motion to reconsider his sentence.  He argued that he was denied a right to a speedy trial, was denied good time credits for a period of time because he was housed in a county facility, and asked that his rehabilitation program be shortened. *Exh. C.*  The trial judge denied the motion "because the sentence imposed was within the range of sentences he agreed to in the plea agreement," but did not otherwise discuss the issues Ardrey raised in his motion. *Exh. D.*

Petitioner then filed a state habeas petition arguing that the three-year probation term breached the plea agreement and that counsel was ineffective. *Exh. E.*  The motion was summarily denied on the grounds that the speedy trial issue had been already been decided and that the substitution of three years probation fell within the plea agreement. *Exh. F.*  The New Mexico Supreme Court denied certiorari. *See Exhs. G-H.*

This timely federal petition followed.  Liberally construing his allegations, Ardrey claims: (1) denial of speedy trial; (2) breach of plea agreement by the imposition of three years probation

---

[1] Unless otherwise noted, all citations to exhibits are those attached to Respondents' Answer.

and a long-term rehabilitation program; (3) involuntary plea, in that the plea was "coerced" by defense counsel's "promise" of leniency based on Ardrey's status as a first-time felon; (4) ineffective assistance of counsel in failing to raise the speedy trial issue and leading Ardrey to believe the trial judge would be lenient in sentencing; and (5) denial of good time credits while housed in a county facility.

## II.  Analysis

Under AEDPA, if a state court decides a claim on the merits its decision is entitled to "deference" and a federal court cannot grant a writ of habeas corpus unless:  (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. §§ 2254(d)(1)-(2); *see also  Williams  v. Taylor,* 529 U.S. ___ , 120 S. Ct. 1495 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied,* 121 S. Ct. 1117 (2001).

Although the two state decisions clearly rejected Petitioner's claims on the merits, the opinions do not specifically address some of the issues raised by Ardrey or address the federal constitutional issues.  It is not definitively settled whether application of the deferential AEDPA standards under these circumstances is warranted.[2]  Nevertheless, I find that the analysis outlined

---

[2]    Two Tenth Circuit panels have questioned whether AEDPA deference is warranted when the state court does not address the federal constitutional claim.  The relevant portion of the unpublished opinion is quoted below in full and, as such, I will not attach it.

> Although Mr. Stuckey presented his due process claim regarding the exclusion of evidence to the Kansas Court of Appeals on direct appeal, that court did not explicitly address Mr. Stuckey's claim on due process grounds.  Instead, its analysis relied on state law.  *See State v. Stuckey,* No. 74, 853, slip op. at 205 (Kan. Ct. App. Feb.

in *Aycox v. Lytle,* 196 F.3d 1174 (1999), should control.

In *Aycox,* the Tenth Circuit explained that the state court need not mention federal law or even contain much reasoning to qualify as an "adjudication on the merits." As long as a claim is decided on the merits and not a state procedural ground, the state decision is entitled to deference. *Id.* at 1177. Where there is no reasoned application of the law to the facts, however, the federal habeas court must engage in an independent review of the record and pertinent federal law to ascertain whether the state's result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented. This "independent review" should be distinguished from a full *de novo* review of petitioner's claims. *See id.* at 1177-78. For the reasons set forth below, I find the state decisions are neither "contrary" nor "unreasonable" under AEDPA.

### A. Speedy Trial and Related Ineffective Assistance of Counsel Claim

Petitioner waived his speedy trial claim by entering his guilty plea. *United States v. Riles,*

---

21, 1997) (unpublished). While it might be arguable that we need not defer to the state court decision in this situation, c*f. Smith v. Scott,* [223 F.3d 1191, 1193 n.1 (10th Cir. 2000)], Mr. Stuckey not only fails to challenge the district court's use of this standard, but he encourages our application of it on appeal. We therefore will view the state court's decision as implicitly rejecting his federal claim, and will defer to its result. *See Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's result, even if its reasoning is not expressly stated.").

*Stuckey v. Koerner,* 229 F.3d 1164, 2000 WL 1346394 at *1 (10th Cir. 9/19/00). In *Smith,* which is cited in *Stuckey,* the Tenth Circuit noted that Petitioner presented an *ex post facto* claim to the state court based on the argument that rescinding earned time credits violated the clause. The state court summarily denied relief saying only that prisoners have no right to an earned credit level. The Tenth Circuit found that the state's "decision does not address Mr. Smith's *ex post facto claim* 'on the merits.'" 223 F.3d at 1193 & n.1.

928 F.2d 339, 342 (10th Cir. 1991) ("By waiving the right to trial, a defendant waives non-jurisdictional defenses"); *see also United States v. Gines,* 964 F.2d 972, 977 (10th Cir. 1992) ("The Speedy Trial Act is not jurisdictional in nature. . . . Appellant thus waived his right to a speedy trial when he pleaded guilty"), *cert. denied,* 506 U.S. 1069 (1993); *Karcher v. Wainwright,* 476 F.2d 179, 180 (5th Cir. 1973) (same applies to guilty pleas in state criminal proceedings; speedy trial rights are nonjurisdictional and waived by guilty plea).

Furthermore, there was no violation of the right. Petitioner argues that proceedings "commenced" in May 1999 when his competency hearing was scheduled in state district court, but he was not sentenced until August 2000. However, assuming Petitioner was arrested when the motion for an evaluation was filed, the record reflects that competency evaluations took seven months to complete. Within two months of the competency hearing an information and notice of firearm enhancement were filed, Petitioner was arraigned and pleaded guilty. After his plea, yet another round of psychiatric evaluations and hearings took place concluding in August at which time Petitioner was sentenced. Thus, the competency and psychiatric proceedings accounted for the vast majority of the time.

On balance, delay for this reason does not violate Petitioner's constitutional speedy trial rights. *See Barker v. Wingo,* 407 U.S. 514 (1972); *see also e.g., United States v. Murphy,* 241 F.3d 447, 454 (6th Cir.) (time for competency evaluation on request of a defendant's attorney excludable under Speedy Trial Act, despite client's objection to the request), *cert. denied,* 121 S. Ct. 2013 (2001). Accordingly, I find the speedy trial issue waived and alternatively without merit. As such, the related ineffective assistance of counsel claim is without merit as well.

### *B. Plea Issues and Related Ineffective Assistance of Counsel Claim*

"An attorney's erroneous sentence estimate or prediction of parole does not render a plea unknowingly made." *Cunningham v. Diesslin,* 92 F.3d 1054, 1061 (10th Cir. 1996). Indeed, an attorney's attempt "to persuade Petitioner that it was in his best interest to plea does not lead to the conclusion that his no contest plea was involuntary." *Miles v. Dorsey,* 61 F.3d 1459, 1470 (10th Cir. 1995), *cert. denied,* 516 U.S. 1062 (1996). This is true even if the attorney's attempts at persuasion are intense. *See United States v. Carr,* 80 F.3d 413, 417 (10th Cir. 1996) (defendant claimed he was "hounded, browbeaten and yelled at" by his attorney, who called defendant "stupid" and "a f**king idiot" when he initially refused plea). In *Carr*, the Tenth Circuit held that "[w]hile these pressures might have been palpable to Appellant, they do not vitiate the voluntariness of his plea; it was still his choice to make." *Id.*

A state court guilty plea will be upheld in federal habeas "if the circumstances demonstrate that the defendant understood the nature and the consequences of the charges against him and that the defendant voluntarily chose to plead guilty." *Miles,* 61 F.3d at 1466 (citing *Boykin v. Alabama,* 395 U.S. 238, 242-44 (1969)). Having reviewed the record, I find that the circumstances establish the voluntariness of Ardrey's guilty plea.

"Interpreting the terms of a plea bargain involves a two-step process. The court must first examine the nature of the prosecutor's promise. . . . Next, the court examines this promise based upon the defendant's reasonable understanding upon entry of the guilty plea ." *Cunningham,* 92 F.3d at 1059. Here, the prosecutor's only promise was to recommend a sentence of no more than ten years. Ardrey indicated he understood that probation, a suspended sentence, and deferred sentence and conditions were possibilities. Moreover, he signed the plea agreement where it

6

expressly provided that if any of those alternatives were imposed, a violation of the terms or conditions could result in modification of the sentence. Ardrey received no more than ten years punishment, three of which are probation with a rehabilitation condition. Therefore, I find no breach and find the plea issue claims are without merit.

### C. Good Time Issue

The United States Court of Appeals for the Tenth Circuit rejected an identical claim in *Ortega v. Williams,* 172 F.3d 879 (10th Cir.) (unpublished and attached), *cert. denied,* 528 U.S. 836 (1999), and for those same reasons I also reject this claim.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** the petition be denied and that this action be dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

172 F.3d 879 (Table)
1999 CJ C.A.R. 831
**Unpublished Disposition**
**(Cite as: 172 F.3d 879, 1999 WL 71715 (10th Cir.(N.M.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.

Robert McDANIEL-ORTEGA, Jr., Petitioner--Appellant,
v.
Joe WILLIAMS, Warden, New Mexico State Penitentiary; Attorney General State of New Mexico, Respondents--Appellees.

No. 98-2142.

Feb. 16, 1999.

Before ANDERSON, TACHA, and EBEL, Circuit Judges.

ORDER AND JUDGMENT [FN*]

**FN\*** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

\*\*1 Petitioner Robert McDaniel-Ortega was convicted of various crimes in three separate New Mexico state court proceedings. After one sentencing proceeding, authorities incarcerated petitioner in county jail for several months while he awaited sentencing in another proceeding and revocation of probation from a prior offense. Petitioner sought a transfer to the state penitentiary during this time so that he could earn good time credit against his sentence. However, he was held in county jail until sentenced in the other two proceedings. Petitioner brought this habeas corpus petition pursuant to 28 U.S.C. § 2254, claiming that New Mexico's failure to transfer him to the state penitentiary immediately after his first sentencing deprived him of the opportunity to earn good time credits for several months, in violation of the Due Process and Equal Protection Clauses of the Constitution. The district court granted respondent's motion to dismiss. Our jurisdiction arises under 28 U.S.C. §§ 1291 and 2253. We affirm.

Background

McDaniel-Ortega's claim arises out of his detention in county jail while awaiting sentencing for multiple convictions in New Mexico state courts. In 1990, petitioner pled guilty to various charges in Dona Ana County, New Mexico and received suspended sentences and probation. In 1993, authorities in both Chaves County, New Mexico, and Dona Ana County charged him with additional and separate offenses. Petitioner was tried and convicted in Dona Ana County in early December 1993 and then transferred to Chaves County, where he pled guilty and received sentence on December 6, 1993. Authorities transferred McDaniel-Ortega back to Dona Ana County on December 27 for sentencing. The Dona Ana court sentenced McDaniel-Ortega on March 17, 1994, but authorities continued to hold him in county jail because of ongoing probation revocation proceedings in the county stemming from his 1990 convictions. The court reinstated McDaniel-Ortega's suspended 1990 sentences on October 28, 1994. [FN1] The state thereafter transferred petitioner to the state penitentiary to serve his sentences.

**FN1.** One reason for the long delay in the probation revocation proceeding appears to be that petitioner's counsel raised questions about his client's competency, leading the court to arrange for a full-scale psychological competency evaluation.

Petitioner claims that his sentences of December 6, 1993, and March 17, 1994, contained orders to transfer him to the state

penitentiary, where he could have earned good behavior credits against those sentences. Notwithstanding these orders, the state kept him in county jail, where he purportedly could not receive good time credits. Thus, petitioner argues that New Mexico's failure to transfer him to the penitentiary immediately after sentencing improperly deprived him of his liberty interest in earning good time credits in violation of the Due Process Clause of the Fourteenth Amendment. Petitioner also claims an Equal Protection violation because prisoners in the penitentiary could earn good time credits, while he could not.

The district court, adopting the recommendation of the magistrate judge, found that the opportunity to earn good time credits in this case implicated no liberty interests covered by the Due Process Clause. Therefore, it dismissed the case. We review the district court's denial of a habeas corpus petition de novo. *See* Bowser v. Boggs, 20 F.3d 1060, 1062 (10th Cir.1994).

I.

**2 As an initial matter, New Mexico argues that petitioner failed to exhaust his claim in state court, as required by 28 U.S.C. § 2254(b)(1), because he changed the nature of his claim in federal court. In order to exhaust state remedies, a habeas corpus petitioner must "present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see also, e.g.,* Duncan v. Henry 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); Nichols v. Sullivan, 867 F.2d 1250, 1252 (10th Cir.1989). This requirement protects federal-state comity and prevents " 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution.' " Picard, 404 U.S. at 275 (quoting *Ex parte* Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)).

Respondent asserts that petitioner's state habeas corpus theory, characterized by respondent as a due process right to transfer between county jail and the state penitentiary, has metamorphisized on appeal to this court into the denial of a state-created liberty interest in good time credits. Respondent thus argues that petitioner failed to present the latter theory to the state court clearly enough to put the state on notice as to the nature of his claim. We disagree.

Petitioner acted pro se until after filing his habeas petition in federal district court. **[FN2]** We must therefore construe his initial pleadings liberally. *See, e.g.,* Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991). Applying this rule, we find that petitioner claimed during state court proceedings that New Mexico's failure to transfer him to the state penitentiary deprived him of an opportunity to earn credits in violation of due process and equal protection. Petitioner presents essentially the same argument to this court. Thus, his appeal is not barred by failure to exhaust. *See* Bowser, 20 F.3d at 1063 (finding petitioner's state court appeal asserted federal rights that, though in somewhat general terms, were "sufficiently discernable to fairly apprise the Colorado Court of the federal nature of [his] claims."); Nichols, 867 F.2d at 1252-53 (finding change in labeling of due process claim between state and federal petitions, plus inclusion of additional facts in federal petition, did not create a fundamentally new argument that the state courts had not had the opportunity to consider). That petitioner did not present his claim to the state in exactly the same terms or with the degree of sophistication as he presents it here is not dispositive. "[F]ailure to invoke talismanic language ... should not be the basis for a finding of nonexhaustion." Nichols, 867 F.2d at 1252; *see also* Bowser, 20 F.3d at 1063.

**FN2.** The district court appointed counsel after respondent filed a motion to dismiss and the court determined that petitioner had exhausted his state remedies.

II.

**3 Petitioner claims that New Mexico violated his constitutional liberty interest in access to good time credits by failing to transport him to the state penitentiary. We find petitioner had no constitutional liberty interest at stake.

While the Due Process Clause itself does not create a liberty interest in good time credits,

a state statute may establish such an interest to which constitutional due process requirements would apply. *See* Sandin v. Conner, 515 U.S. 472, 477-78, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Wolf v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Supreme Court recently clarified that we must look to the nature of the alleged deprivation in determining the type of liberty interests cognizable in this area. Liberty interests "will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In *Sandin,* a prisoner sought to challenge a disciplinary proceeding on procedural grounds, arguing that he had a liberty interest in being free from unfair disciplinary segregation, *see id.* at 475-76, and from having that punishment affect his chance for parole, *see id.* at 487. The Court rejected this claim, finding that prison discipline and punishment are ordinary conditions of prison life and not atypical hardships. *See id.* at 486. Elaborating on what might constitute such a hardship, the Court found the punishment at issue also did not:

> present a case where the State's action will inevitably affect the duration of [a prisoner's] sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation a relevant consideration. The decision to release a prisoner rests on a myriad of considerations.
>
> *Id.* at 487 (internal citations omitted).

Petitioner claims that New Mexico has created a "right" to good time credits. The New Mexico statutes at issue, however, create no such right. Although New Mexico law authorizes good time credit for prisoners in both state and county facilities, *see* State v. Aqui, 104 N.M. 345, 721 P.2d 771, 774-75 (N.M.1986), the language authorizing such credits is discretionary, *see* N.M.Stat.Ann. § 33-2-34 ("Any inmate confined in the penitentiary ... or other institution ... designated by the corrections department for the confinement of adult criminal offenders *may* be awarded a meritorious deduction of thirty days per month upon recommendation of the classification committee and approval of the warden." (emphasis added)); *id.* § 33-3-9 ("The sheriff or jail administrator of any county, with the approval of the committing judge ..., *may* grant any person imprisoned in the county jail a deduction of time from the term of his sentence for good behavior...." (emphasis added)). Thus, the language contained in these statutes establishes that good time credits are merely a possibility and not a mandatory right.

**\*\*4** The possibility of good time credits under New Mexico law does not create a liberty interest that implicates due process. Petitioner cannot prove that he would have qualified for and received credits or that the state's action "inevitably affect[ed] the duration of his sentence." Sandin, 515 U.S. at 487. Like *Sandin,* this case presents a scenario that is "simply too attenuated" for constitutional protection. *See id.* The loss of the possibility to earn good time credits is a product of petitioner's incarceration in county jail for further sentencing. "[S]uch speculative, collateral consequences of prison administration decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995) (finding that placing prisoner in administrative segregation and depriving him of the possibility of earning good time credits did not involve a liberty interest); *see also* Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir.1996) (holding that convicted prisoner with no access to good time credit program because he was incarcerated in county jail had no constitutional interest in the opportunity to earn credits); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir.1995) (holding that termination from a job that automatically earned good time credits did not implicate any liberty interest).

Here we confront a claim very similar to that analyzed by the Seventh Circuit in *Antonelli.* In that case, Antonelli argued that his post-conviction detention in county jail denied him "the opportunity ... to earn good time credits." Antonelli, 81 F.3d at 1431. The Seventh Circuit, citing *Sandin,* held that Antonelli "has no due process interest in the opportunity to earn good time credits." *Id.* We find this reasoning applicable to the instant case.

Moreover, although petitioner asserts that the New Mexico courts, in Brooks v. Shanks, 118 N.M. 716, 885 P.2d 637 (N.M.1994), recognized a liberty interest in good time credit, we do not read *Brooks* as establishing a broad general right to these credits. *Brooks* recognizes a due process right only when "a forfeiture or termination has been imposed in a manner that departs from or circumvents the statutory and administrative procedures prescribing how such a forfeiture or termination should be effected." *See id.* at 641. The petitioner in *Brooks* lost his eligibility to earn any future credits as a part of a disciplinary action that did not follow proper review procedures. *See id.* at

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

639-40. Thus, Brooks showed that the review of his punishment deviated from the statutorily imposed procedure. *See id.* In contrast, McDaniel-Ortega pointed to no violation of statutory procedure. Under New Mexico law, eligibility for good time credits begins when the prisoner is "confined to the penitentiary," N.M.Stat.Ann. § 33-2-34, or "imprisoned in the county jail," *id.* § 33-3-9. **[FN3]** New Mexico authorities did not transfer McDaniel-Ortega to the state penitentiary until completion of all his sentencing proceedings. Thus, *Brooks* does not apply. **[FN4]**

**FN3.** The parties agreed at oral argument that the good time provision for county jail incarceration, N.M.Stat.Ann. § 33-3-9, applies only to prisoners serving county sentences. The District Court of Chaves County ordered petitioner to serve his sentence with the state Department of Corrections, rendering him ineligible for credits under § 33-3-9. Moreover, we find no evidence in the record that the county facilities in which petitioner was incarcerated were "designated by the corrections department", N.M.Stat.Ann. § 33-2-34, to house state prisoners.

**FN4.** We note that the New Mexico Supreme Court decided *Brooks* a year before the Supreme Court issued *Sandin,* and it applied the test for determining the existence of a liberty interest that the Supreme Court abandoned in *Sandin. Brooks* relied upon Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), which held that a state could create a liberty interest by "placing substantive limitations on official discretion." Since New Mexico law established definitive procedures for reviewing removal of good time credits, the *Brooks* court found the law placed limitations on official discretion. *See* Brooks, 885 P.2d at 641.

The Supreme Court explained in *Sandin* that the *Olim* approach had led to a "search for a negative implication from mandatory language in prisoner regulations [that] has strayed from the real concerns undergirding the liberty protected by the Due Process Clause." Sandin, 515 U.S. at 483. The Court abandoned that approach in favor of the "nature of the interests" test. *See* id. at 483-84. Because we find that *Brooks* does not apply to the present case, we need not decide whether the *Sandin* standard affects the validity of *Brooks*.

**\*\*5** In sum, keeping a convicted offender incarcerated in county jail while he awaits additional sentencing does not constitute the kind of "atypical and significant hardship on the inmate" that creates a liberty interest. *See* Sandin, 515 U.S. at 484. Therefore, petitioner cannot establish a violation of the Due Process Clause.

III.

Petitioner also makes an equal protection argument that he was treated differently than similarly-situated inmates who were incarcerated in the state penitentiary and eligible to earn good time credits. We hold that New Mexico's treatment of petitioner did not violate the Equal Protection Clause.

We review the state's distinction between petitioner and prisoners in the state penitentiary to determine whether it serves a rational purpose. *See* McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); Lemieux v. Kerby, 931 F.2d 1391, 1393 (10th Cir.1991). Keeping a felon in county jail until he has been sentenced for all of his multiple offenses serves the legitimate state interests of safety and economy. Transferring a prisoner to the state penitentiary between sentencing proceedings involves significant costs, poses a risk of escape, and increases the risk of harm to corrections employees and the public. The state's decision to keep petitioner in county jail until final sentencing therefore survives rational basis scrutiny. *Cf.* Lemieux, 931 F.2d at 1392-93 (upholding distinction between pre-sentence detainees, who are not eligible for credits, and incarcerated prisoners because the good credit scheme serves rehabilitative purposes that do not apply to pre-sentence detainees, who are presumed innocent until final entry of judgment and sentence); State v. Aqui, 104 N.M. 345, 721 P.2d 771, 775-76 (N.M.1986) (same). Accordingly, petitioner's equal protection argument fails.

The district court's dismissal of McDaniel-Ortega's petition for a writ of habeas corpus

is AFFIRMED.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works